IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL GRAY,　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　　　 )　　Civil Action No. 09-257 Erie
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)　　District Judge Sean J. McLaughlin
　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Susan Paradise Baxter
RAYMOND LAWLER, et al.,　　　　　　　)
　　　　Respondents.　　　　　　　　　)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.　RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

### II.　REPORT[1]

#### A.　Relevant Background

In February of 2004, Attorney General Agent Christopher Parker was in the midst of an investigation of Petitioner, Paul Gray,[2] for suspected drug trafficking. In the early morning hours of February 23, 2004, he drove by Petitioner's residence and noticed a brown refuse tote and a metal trash can near the roadside. Both receptacles were full of trash bags. Both were placed at the edge of the roadway for pick-up by the trash collectors during the night. (Vol. I at 12-13, Commonwealth v. Gray, No. 2004-285, slip op. at 1-2 (C.P. Crawford Jan. 5. 2005)).

---

[1]　Respondents have submitted the relevant state court records in Volume I of the Reproduced Record. That volume will be cited to as "Vol. I at __." Volume II of the Reproduced Record contains the relevant transcripts.

[2]　At various points in the record, Petitioner's last name is spelled "Grey." The Court has spelled his name "Gray," as that is the way the state courts spelled it.

1

Agent Parker contacted Agent Robert Golenberke and asked him to take part in a "trash pull." They drove by Petitioner's residence and parked their vehicle between 80-100 feet farther down the road. They walked down the road and each picked up as many trash bags as they could carry from the tote and metal can at Petitioner's residence. They put the bags in the trunk of their unmarked vehicle and drove it back to the Meadville City Police Station to search through it. (Vol. I at 13, Gray, No. 2004-285, slip op. at 2). The "trash pull" of Petitioner's residence yielded multiple zip-lock baggies containing cocaine residue and green vegetative matter that field testified positive for marijuana. (Vol. I at 9-10).

Based on evidence collected from the "trash pull" and the testimony of several confidential informants, Agent Parker obtained a search warrant for Petitioner's residence. (Vol. I at 7-11). The confidential informants were referred to as "CI-1," "CI-2," and "CI-3." The warrant was executed on the evening of February 24, 2004, during which time narcotics agents recovered five marijuana plants, cocaine, and various drug paraphernalia from Petitioner's residence. He was arrested and charged with one count each of possession with intent to deliver, unlawful manufacture of a controlled substance, and possession of a controlled substance. (Vol. I at 12, Gray, No. 2004-285, slip op. at 1).

Petitioner, through his pre-trial attorney Robert E. Draudt, Esq., filed an omnibus pretrial motion in which he sought suppression of the evidence. (Vol. I at 2-6). He argued, in relevant part, that in the affidavit of probable cause attached to the search warrant, Agent Parker listed unreliable information supplied by the confidential informants.

A hearing on Petitioner's motion was held on December 16, 2004. Steven Hill, who is "CI-3," testified on behalf of Petitioner. He denied having made any of the statements attributed to him. Agent Golenberke testified in rebuttal that he spoke with Hill about drug trafficking on numerous occasions, and that Hill specifically told him that he had purchased cocaine from Petitioner at his residence.

2

Petitioner also had subpoenaed John Sorsby, who is "CI-2." Sorsby was brought in from the Crawford County Correctional Facility, where he was in custody. During the suppression hearing, Sorsby was waiting his turn to testify, seated in the hallway outside the courtroom. A sequestration Order had been granted.

During the testimony of Hill, Agent Parker walked out of the courtroom. He began speaking to Sorsby in the hallway. This came to the trial court's attention as it was occurring:

| | |
|---|---|
| Court: | I don't know what Mr. Parker went out for. He can't talk to Agent Golenberke. |
| ADA Bauer: | I'm assuming he had to go to the bathroom. He said – |
| Court: | There's a Sequestration Order. |
| Bauer: | I understand Judge. |
| Draudt: | Your Honor, he's out there talking to him – to – |
| Court: | To one of your witnesses? |
| Draudt: | -- that's sequestered. |
| Court: | I guess he can talk to anybody he wants to. Anybody he talks to can refuse to talk to him. But, he can't talk about what's going on in this courtroom with sequestered witnesses. This isn't kindergarten. This is a courtroom. |
| Bauer: | I didn't tell him to go talk to anybody. |
| Court: | I'm not blaming you. Somebody's got to warn Agent Parker. Mr. Graham, why don't you have them bring Mr. Parker in so I can tell him what I want to tell him. Is Agent Parker out there? |
| Bauer: | He's coming right in, Judge. |
| Court: | Okay…. Mr. Parker, there's been a Sequestration Order on Commonwealth witnesses and defense witnesses, which essentially means they can't know what goes on in the courtroom. |
| Parker: | I understand that, Judge. |

3

| | |
|---|---|
| Court: | They can't know … -- they can't know what's going on in the courtroom from others who have been in the courtroom. |
| Parker: | I understand that. I discussed absolutely nothing about any of the preceed [sic] – I only discussed with Mr. S— about not disclosing him in the search warrnat [sic] back when the Search Warrant was signed. I assured Mr. S — … I did not disclose his name in a search warrant when I applied for the search warrant for [Petitioner]. I said nothing about my testify [sic] or anybody else's testimony, Judge. |
| Court: | The Sequestration Order – I made clear as to what it means. It doesn't affect other conversations that have nothing to do with what took place in the courtroom. |

(Suppression Hr'g Tr. at 49-52). There the matter ended. No objections were entered on the record by Attorney Draudt. Afterwards, Petitioner testified, a different narcotics agent presented rebuttal testimony, and the suppression hearing concluded. Sorsby did not testify, nor did the informant referred to as "CI-1."

On January 5, 2005, the trial court issued a Memorandum and Order in which it denied the motion to suppress. In relevant part, it held:

> Information obtained from confidential informants may properly form the basis for determinations of probable cause to arrest or search. Determination of probable cause to search based on information provided by [a] confidential informant depends on the informant's reliability and basis of knowledge, viewed in [a] common sense, non-technical manner. Tip[s] provided by [a] confidential informant may constitute probable cause to search where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity. Com. V. McJett, 811 A.2d 104 (Pa.Cmwlth 2002).
>
> - - -
>
> As to the confidential informants labeled in the affidavit of probable cause as CI-1 and CI-2 there is sufficient information regarding the reliability of those informants. They both gave past information which turned out to be reliable and [led] to further criminal proceedings. CI-1 allegedly purchased cocaine from [Petitioner] and observed [him] in possession of a large amount of cocaine. He also allegedly said that he had been at [Petitioner's] residence on the Franklin Pike while [Petitioner] was selling cocaine and packaging cocaine for sale.

4

> CI-2 allegedly said that [Petitioner] travels out of state to obtain cocaine in large quantities.
>
> [Petitioner] claims that CI-3 did not provide the information that is attributed to him in paragraphs 8 and 9 of the affidavit of probable cause… In fact[,] that confidential informant turns out to be Steven J. Hill who testified at the suppression hearing on December 16, 2004. It is true that Mr. Hill categorically denied having made any of the statements attributed to him in the affidavit of probable cause.
>
> [Petitioner] is correct in that "if a search warrant is based upon an affidavit containing deliberate or material misstatements, the search warrant is invalid. Commonwealth v. Brown, 836 A.2d 989 [Pa. Super. 2003.]
>
> [Petitioner] has not satisfied this court [that] Agent Parker *deliberately* included [a] statement of material fact in the affidavit of probable cause. Commonwealth v. Messersmith, 860 A.2d 1078 (Pa.Super. 2004). We do not have to make a determination on credibility because, insofar as the information given by the confidential informants is concerned, the information supplied in the affidavit of probable cause that was attributed to CI-1 and CI-2 was sufficient.

(Vol. I at 16-18, Gray, No. 2004-285, slip op. at 5-7 (emphasis in original)).

A trial was held on August 25, 2005. By that point, Petitioner had retained another attorney, Gene P. Placidi, Esq. He was found guilty of: (1) possession with intent to deliver (Count I); and, (2) unlawful manufacture of a controlled substance (Count II). On December 6, 2005, the court sentenced him to an aggregate term of 6-14 years of imprisonment.

Petitioner, through Placidi, filed an appeal with the Superior Court of Pennsylvania. He alleged, in relevant part, that the trial court had erred and that the search warrant should have been invalidated when Hill, CI-3, "categorically denied under oath at the suppression hearing making any of the statement attributed to him in the Affidavit of Probable Cause." (Vol. I at 33).

On October 13, 2006, the Superior Court issued a Memorandum in which it affirmed Petitioner's judgment of sentence. (Vol. I at 88-97, Commonwealth v. Gray, No. 2205 WDA 2005, slip op. (Pa.Super. Oct. 13, 2006)). It determined: "[T]he information that truly provided probable cause in this instance stemmed from the officers' 'trash pull' of [Petitioner's] residence just one day before the search

5

warrant was issued." (Vol. I at 94-95, Gray, No. 2205 WDA 2005, slip op. 7-8). The Superior Court further concluded: "Contrary to [Petitioner's] claim, the record is devoid of any evidence Agent Parker deliberately included mis-statements of material facts in the Affidavit of Probable Cause." (Vol. I at 95-97, Gray, No. 2205 WDA 2005, slip op. 8-10).

Petitioner next challenged his judgment of sentence by filing a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. Ross C. Prather, Esq., was appointed to represent him and counsel filed an amended PCRA petition. Therein, Petitioner raised the claim that he raises in this proceeding: that his counsel was ineffective for failing to object when Agent Parker left the suppression hearing and confronted John Sorsby, CI-2, thereby intimidating him to such an extent that he refused to testify on the defense's behalf at the hearing.

The PCRA Court presided over an evidentiary hearing on July 23, 2008. Sorsby testified for Petitioner and Attorney Draudt testified for the Commonwealth. Sorsby stated that he was subpoenaed to testify on Petitioner's behalf at the suppression hearing, but had not indicated to Attorney Draudt how he would testify. (PCRA Hr'g Tr. at 5-6). He told Draudt "that I knew [Petitioner] … and I would get on – come on to the stand and answer the questions that were asked." (Id. at 6). With regard to his encounter with Agent Parker, Sorsby stated: "Agent Parker came busting through the doors saying this was bull and the District Attorney came following him out – following him out and told him to get back inside that he can't be talking to nobody[.]" (Id. at 9). According to Sorsby, Agent Parker was "highly upset to almost irate … All he said to me was this is bull that he wanted me to get up there and he wanted me to tell the truth and stuff like that." (Id. at 9-10). After the encounter, Sorsby testified that he "decided I wasn't testifying on behalf of [Petitioner] that day." (Id.) When asked why, he answered:

Sorsby: Because I was scared of what would happen to me if – you know, I was getting, I was already in trouble. I was already in custody. And I – you

6

|  | know, I believed that, you know, they was mad. – The Attorney General. I wasn't getting up on that stand.<br>---<br>To make it simple, I was scared. |
|---|---|
| Prather: | … Did you talk to Mr. Draudt about that? |
| Sorsby: | No. |
| Prather: | Okay. Did Mr. Draudt ask you about it? |
| Sorsby: | Mr. Draudt came up to me and I told him that I wasn't testifying, that if he put me on the stand it would be worse for him. This way I knew he would not put me on that stand. |

(Id. at 12-14).

Attorney Draudt testified that he had interviewed Sorsby prior to the suppression hearing and he appeared willing to give statement that would be helpful to Petitioner. (Id. at 18-19). Draudt explained that, after Agent Parker had gone out into the hallway, he spoke with Sorsby, who was "really agitated." (Id. at 19). He testified that:

> [Sorsby] told me that he was – he didn't want to testify that he – he didn't know what he would say when he was up there that he was – he was afraid. And I told him, I said, you know, all you need to do is go up there and tell the truth about … what you told me and he said that I don't remember. I know that I – I know that what I knew at the time was that I thought he would – I was afraid of what he would say at that point on the stand whereas when I interviewed him previously, he told me flat out that … he never made these statements to Agent Parker, … [S]o I thought, … I can't call this guy as a witness because he's either going to say he refuses to testify or he is going to, … say something that's going to hurt my client, so I didn't call him.

(Id. at 20-21). Draudt acknowledged that he did not seek any legal recourse following Agent Parker's confrontation with Sorsby in the hallway. (Id. at 26-27). He explained that shortly after the suppression hearing, Petitioner hired Attorney Placidi to replace him and he brought the issue to new counsel's attention. (Id. at 25).

7

On July 30, 2008, the PCRA Court issued a Memorandum and Order in which it denied Petitioner's request for relief. (Vol. I at 121-26, Commonwealth v. Gray, No. CR 285-2004, slip op. (C.P. Crawford July 30, 2008)). It noted that Agent Parker's statement to the court during the suppression hearing about what he had said to Sorsby in the hallway conflicted with Sorsby's account:

> Frankly, when one puts this all into perspective, including reviewing the Suppression Hearing transcript leading up to Parker going out of the courtroom, his [Parker's] explanation does not seem very feasible. It seems more reasonable that he did not like hearing another confidential informant (Steven Jennings Hill) testify contrary to what was in the Affidavit of Probable Cause for the Search Warrant and went outside angry, imploring Mr. Sorsby to tell the truth, which we assume Parker felt would be consistent as to what he had represented Sorsby as a confidential informant told him in the Affidavit of Probable Cause.
>
> Having said that, however, there is nothing on the record to indicate that Agent Parker, in any way, threatened or coerced Mr. Sorsby not to testify for [Petitioner]. Clearly, Agent Parker had no business going into the hallway or saying anything to [Sorsby], but there is nothing on the record to indicate that if Mr. Draudt, or Mr. Placidi for that matter, had investigated, they would have concluded that any objection or legal challenge was appropriate.
>
> The end result is simply that after Sorsby saw Agent Parker upset and heard Agent Parker indicate to him that he should tell the truth, Sorsby appeared to become upset himself and did not want to testify, particularly favorably for [Petitioner].
>
> Sorsby did not testify that as a result of what Agent Parker said to him he was afraid to testify as to what was true, which would have benefited [Petitioner]. He merely testified that he did not want to testify because he did not want to get into any other trouble, which could very well have simply meant that he didn't want to lie under oath and get into more trouble and thus, he told Draudt he did not want to testify and if he did, it could make matters worse for [Petitioner].
>
> Based on the record in this case, we cannot conclude that Mr. Draudt [or] Mr. Placidi were ineffective.

(Vol. I at 125, Gray, No. CR 285-2004, slip op. at 5).

Petitioner, through Prather, appealed to the Superior Court. On June 4, 2009, the Superior Court issued a Memorandum in which it affirmed the PCRA Court's decision. (Vol. I at 158-169, Commonwealth v. Gray, No. 1398 WDA 2008, slip op. (Pa.Super. June 4, 2009)). It held:

8

> Unfortunately for Petitioner, the PCRA court concluded that he did not establish that the actions or statements of Agent Parker constituted a threat, which intimidated Mr. Sorsby and prevented him from testifying at the suppression hearing.
>
> Moreover, the PCRA court discussed other possible reasons why Mr. Sorsby may have decided not to testify, and concluded that [Petitioner] must prove that Mr. Sorsby's truthful testimony would have contradicted the statements in the affidavit of probable cause. In doing so, the PCRA court essentially concluded that [Petitioner] could not establish prejudice, *i.e.*, a causal connection between Agent Parker's conduct and the absence of Sorsby's testimony….
>
> … Thus, because [Petitioner] did not establish that he was prejudiced by the absence of Mr. Sorsby's testimony, his ineffectiveness claim fails.

(Vol. I at 169, Gray, No. 1398 WDA 2008, slip op. at 12-13). On February 12, 2010, the Supreme Court of Pennsylvania denied a petition for allowance of appeal.

In this habeas action, Petitioner challenges the outcome of the PCRA proceedings and contends that he is entitled to a new trial. [See ECF Nos. 1, 22].

### B. Discussion

#### 1. Standard of Review

Because the Superior Court rejected Petitioner's claim on the merits, this Court's analysis is governed by the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of,

9

clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[3] Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

> As the Supreme Court recently observed:
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but

---

[3] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. at 234, quoting Williams, 529 U.S. at 407.

objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

### 2. Analysis

The "clearly established Federal law" for AEDPA purposes in which to analyze Petitioner's claim of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner first must show that his counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91.[4] Strickland also requires Petitioner to demonstrate that he was prejudiced by counsel's alleged deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the correct legal standard when it evaluated Petitioner's ineffective assistance claim. (Vol. I at 161, Gray, No. 1398 WDA 2008, slip op. at 4). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication of Petitioner's claim satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406.

---

[4] The law presumes that counsel was effective. Strickland, 466 U.S. at 689. The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

11

Thus, the only remaining questions for this Court to decide is whether the Superior Court's adjudication of Petitioner's claim was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.

In this case, the Court cannot conclude that the Superior Court's adjudication was an objectively unreasonable application of Strickland or an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). It is not enough for Petitioner to establish that, but for counsel's alleged ineffectiveness, there is a reasonable probability that the outcome of the suppression hearing would have been different. Rather, he must establish that the Superior Court's determination that he did not show that he was prejudiced by counsels' alleged ineffectiveness is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 787. Petitioner has failed to meet this "substantially higher threshold." Schriro, 550 U.S. at 473.

Importantly, the PCRA court concluded that there was no evidence that Agent Parker threatened or intimidated Mr. Sorsby and prevented him from testifying at the suppression hearing. Thus, Petitioner has not established that if his counsel had objected to Parker's conduct, that the trial court would have ruled favorably to the defense. Moreover, Sorsby's PCRA testimony established only that

12

he decided he did not want to testify at the suppression hearing because he did not want to get into any other trouble. As the state court concluded, Sorsby's testimony could reasonably be interpreted to mean that he did not want to lie under oath and get into more trouble and that he is why he refused to take the stand at the suppression hearing.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claim should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and

Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u><br>
SUSAN PARADISE BAXTER<br>
United States Magistrate Judge

Dated: August 29, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge